# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| COREY J. OSBORNE,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART STORES EAST, LP, et al.,<br><br>Defendants. | Civil Action No. 6:20-cv-0079-NKM |

## DECLARATION OF SETH HARRIS

I, Seth Harris, being first duly sworn, depose and state that I am of full age, and have personal knowledge of the following facts:

1. I am over twenty-one (21) years of age, and I sign this Declaration of my own will.

2. I have personal knowledge of the facts set forth in this Declaration, or I have knowledge of such facts based upon my review of company business records and files.

3. I have worked for Walmart since May of 2009. I am currently employed by Walmart as a People Operations Lead in Market #315.

4. Between January 2019 and April 2020, Walmart filled three Asset Protection Manager ("APM") positions in Market #315.

5. At the time, all APMs were hired via a Regional Selection process that occurred quarterly.

6. Walmart assigns preference to current Associates and, in this regard, notices of these events were posted in the Stores for Associates to review.

7. Associates who applied for an open position in the region were first reviewed by their Store Managers ("SMs") via a Readiness Assessment.

8. The Associates were then reviewed by the Market team if their score met the qualifications. As part of their evaluation, the Market team considered whether an Associate had any active Disciplinary Actions ("DAs") along with the Associate's annual performance review scores and their attendance.

9. If there were not enough qualified internal candidates for a position, including APM positions, Walmart would begin to consider external candidates.

10. The number of candidates who were selected for the management training program was also based on current and projected future need.

11. If the Market team agreed that the candidates were qualified, they sent them to be interviewed by a panel of leadership from a different Market, who made the final recommendation as to whether the Associates would begin the management training program.

12. Even if a candidate was selected for the management training program, the candidate could "sit on the bench" for up to six months following their selection for an APM position and then have up to six weeks of training.

13. Those Associates who were not selected would meet with their Store Managers to discuss why they were not selected and what they needed to work on before the next Regional event.

14. Mr. Osborne was aware of this process as it had been employed by Walmart for several years and he understood that to be considered, he would have to apply for a position.

15. The last Regional Selection event occurred in October 2019.

16. Using the Regional Selection process, Market #315 hired two external candidates and one internal candidate between January 2019 and April 2020.

17. Two of the three candidates had law enforcement backgrounds and the third had previously worked as a Customer Service Manager ("CSM") and APA for Walmart and already passed the Readiness Assessment.

18. Walmart's records show that Mr. Osborne never applied for any other positions at Walmart., other than the APA position, which he held.

19. It is my understanding that Walmart received a customer complaint in May 2020 regarding an asset protection incident involving Mr. Osborne and Stephanie Stone, a Customer Service Manager, at Walmart Store #1350.

20. Michael Berry, who was the Asset Protection Assistant Store Manager ("APASM") at Walmart Store #1350 at the time, opened an investigation into this complaint.

21. After reviewing the witness statements from the Associates involved, which Mr. Berry collected as part his investigation, Store Manager Ryan Fisher decided to issue a Disciplinary Action 3 – Red (Final Warning) to Ms. Stone.

22. However, based on Mr. Osborne's (a) previous Disciplinary Action 1 – Yellow; (b) his heightened level of responsibility with AP apprehension status; (c) his failure to report the unproductive apprehension; and (d) his admissions that he offered to go with Ms. Stone to ask the customer for her receipt and approached the customer with Ms. Stone – actions which all violated Walmart's AP-09 policy, I recommended that Walmart terminate Mr. Osborne's employment.

23. Although she was not an Authorized Associate under Walmart's AP-09 policy, Ms. Stone was not subject to the same level of discipline as Mr. Osborne because she had no currently active disciplinary actions and it was determined that she was following Mr. Osborne's direction.

24. After the decision was made to terminate Mr. Osborne, Mr. Osborne filed an internal complaint alleging that his termination had been racially motivated.

25. Walmart was unable to substantiate these allegations. As a result, the investigation was closed on July 10, 2020, with a no action needed recommendation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

December 24, 2021

_____
Seth Harris