

# Section 100: AP-09 Supplemental Investigation & Detention Guide

**Purpose Of Guide**

This guide to the Investigation and Detention of Shoplifters Policy, AP- 09, is designed to be a reference manual providing explanatory materials that will assist authorized associates in correctly applying AP-09.

- Failing to comply with AP-09 or this guide may result in disciplinary action, up to and including termination.

**Overview**

AP-09 sets forth the procedures authorized associates must follow in investigating and detaining suspected shoplifters. AP-09 rests on these core principles:

- Your personal safety and the safety of our associates and customers is your top priority. Nothing in this policy supersedes the importance of protecting yourself and others from injury.
- Surveillance of a person must be based upon objective actions and cannot be based on race, color, religion, sex, pregnancy, national origin, age, disability, veteran status, sexual orientation, gender identity/expression or any other legally protected status.
- Treat detained suspects with respect and courtesy. Suspects may only be processed in a private location inside the facility. Make the detained suspect as comfortable as possible under the circumstances.
- Take personal responsibility. Do not violate AP-09, even if directed to do so. If you observe or become aware of this policy being violated you are required to report the incident to the market asset protection manager and regional asset protection director for the facility.

In most cases, proper surveillance, investigation and detention techniques will reduce the possibility of confrontations leading to the risk of injuries to our associates, customers and suspects while still achieving the goals of asset protection. This guide provides information and tools to assist you with your understanding of the company's expectations with regard to the proper handling of potential shoplifting incidents. For ease of use, it is divided into seven sections:

- Section 100. AP-09 Supplemental Investigation and Detention Guide
- Section 101. Lease Space Process Control and AP Guidelines
- Section 102. Guidelines for the Investigation of Financial Crimes
- Section 200. Civil Recovery



WM-OSBORNE0000236



- Section 300. Investigative Report
- Section 400. Collection, Handling & Preservation of Evidence
- Section 500. Asset Protection Files
- Section 600. Court
- Section 700. Key Terms.

In order to make best use of the guide, you must first be thoroughly familiar with the AP-09 policy.

| | |
|---|---|
| **Walmart's** Right To Investigate And Detain Shoplifters | What is shoplifting?<br><br>Shoplifting is the criminal offense of stealing merchandise displayed for sale within a retail business establishment. Essential elements of the offense include (1) willfully taking possession of merchandise offered for sale, (2) with the intention of converting the merchandise to the taker's own use, (3) without paying the purchase price of the merchandise.<br><br><u>Reasonable or Probable Cause to Investigate and Detain Shoplifters</u><br><br>Walmart is considered a "merchant" under state laws. Merchants are permitted by state laws known as "merchant privilege statutes" to investigate and detain shoplifting suspects for possible referral to law enforcement authorities. This right to investigate and detain suspects is commonly referred to as the "merchant's privilege." Merchant's privilege statutes may provide you and Walmart with limited legal defenses against certain legal claims, provided you (1) have reasonable and probable cause to conduct a shoplifting investigation; (2) detain the subject in a reasonable manner; and (3) detain the subject for a reasonable amount of time. The rules and procedures set forth in AP-09 are designed to meet or exceed the requirements of state merchant privilege statutes. |
| Basic Components Of A Shoplifting Incident | A shoplifting investigation and detention generally involves all or most of the following components:<br><br>- Suspicious behavior<br>- An unlawful taking<br>- Approaching the Suspect and investigating the unlawful behavior<br>- Detention<br>- Administratively processing the Suspect<br>- Releasing or referring the Suspect to Law Enforcement authorities<br>- Investigative report |



WM-OSBORNE0000237



| | This guide explains each of these components, as well as discussing other relevant matters. |
|---|---|
| Take Personal Responsibility | Do not violate this policy, even if directed to do so.<br><br>If you observe or become aware of this policy being violated, immediately notify the market asset protection manager and regional asset protection director for the facility.<br><br>If you are aware of become aware of a detention or attempted detention which results in physical contact between a customer and an associate beyond light physical contact, as defined under **"Authorized Methods of Detention" of this policy, you are required** to immediately report the incident to the market asset protection manager and regional asset protection director for the facility. |
| Identifying Shoplifting Suspects | <u>Policy</u><br><br>*Any person in a facility who engages in behavior that reasonably suggests that the person may be attempting to shoplift ("suspicious behavior") may be considered a suspected shoplifter ("suspect") for the purpose of beginning surveillance under this policy. Authorized associates may themselves observe or rely on a report of suspicious behavior from any other associate, or third party for the purpose of identifying a suspect.*<br><br>*All associates not specified as an authorized associate may not participate in the surveillance, investigation and/or detention of a person suspected of or committing shoplifting except to; act as a witness to an investigation or detention from a safe distance; to provide an accurate statement of their observations while acting as a witness; and to contact law enforcement, emergency services, Walmart Asset Protection or Walmart store management.*<br><br>*Any associate not specified as an authorized associate that witnesses or is made aware of suspected criminal activity or violence within a facility should advise a member of Walmart Asset Protection or member of management of the incident and if necessary to protect the safety of themselves, other associates or customers, contact the appropriate law enforcement or emergency authorities.*<br><br>Neither authorized associates nor any other associate may monitor or surveil a person based on race, color, religion, sex, pregnancy, national origin, age, disability, veteran status, sexual orientation, gender identity/expression or any other legally protected status.<br><br>Suspicious Behavior |



WM-OSBORNE0000238


Each shoplifting incident must begin with a recordable observation of the suspect engaging in suspicious behavior. Suspicious behavior is conduct that would lead a reasonable person to suspect that a person was considering shoplifting. If you cannot specifically identify and describe the suspicious behavior, in which the suspect was engaged, you are not authorized to begin surveillance of the suspect.

This constitutes as your first element.

Examples of Suspicious Behavior That May Warrant Surveillance

Depending on the circumstances, the following types of conduct by customers may constitute suspicious behavior that warrants surveillance:

- Opening merchandise packaging.
- Removing merchandise from packaging.
- Entering the facility with empty shopping bags.
- Wandering around the facility with large shopping bags, backpacks, open purses or duffel bags.
- Engaging in conversations that suggest they intend to steal merchandise.
- Transferring merchandise from the original container into another.
- Wearing out-of-season apparel, i.e., a winter coat during summer.
- Folding or condensing merchandise before payment is made.
- Moving throughout the facility and reappearing at the same counter.
- Removing labels or price tags from merchandise.
- Changing or altering labels or price tags.
- Creating disturbances to distract facility personnel.
- Entering the facility with merchandise (apparently intended for return)
- Removing large quantities of a particular item from the shelf.
- Intently studying the facility's security conditions rather than the merchandise being selected.

Note: These are merely examples of conduct that suggest an individual may intend to shoplift. Many suspects who intend to shoplift may not engage in any of these activities, while some honest customers may engage in these activities without any intention of stealing. That is why, before approaching a suspect, authorized associates must establish that an unlawful taking has occurred by observing the suspect complete <u>all</u> five elements.





Photo Center Note: Selection and concealment of processed film at the photo center does not necessarily constitute suspicious behavior. The customer may take prints to several different registers for payment within the facility, the prints may have been paid for prior to selection, or the facility may have provided the prints to the customer at no charge. Do not investigate and/or detain a customer solely based upon the selection and concealment of film or prints from the photo center.

Pharmacy Note: Selection and concealment of prescription medication from the pharmacy does not necessarily constitute suspicious behavior. The customer may take their prescription to another register for payment, the prescription may have been paid for prior to selection, or the prescription may have been given to the customer with no charge. As a result, do not investigate and/or detain a customer solely based upon the selection and concealment of prescription medication from the pharmacy. The following procedures within the pharmacy will give you a basic understanding of how these conditions may occur:

Front Lane Scanning - Customers have the option to pay for most prescriptions (under $100) at any register after the prescription is released from TaSCO. If a prescription released for front lane scanning appears on the POS Pending Action Required Report as unpaid, stores should follow procedures as outlined in the Pharmacy Operations Manual section 508 (POM 508).

Easy Pay – The Easy Pay program retains a customer's credit/debit card information on file to enable quick and easy prescription purchases. An Easy Pay customer can opt to charge their Easy Pay account when their order is checked out through TaSCO. TaSCO processes the amount due to the credit card on file. The register process is eliminated. Additional information can be found in the Pharmacy Operations Manual section 1806 (POM 1806).

Partial Fill – When there is insufficient quantity to fill the prescription, the pharmacy may dispense an initial partial fill for the customer. At that time, the third party payer will not be billed for the medication that is initially delivered to the customer. When the customer returns for the remainder of their order, a claim for the entire amount of the prescription will be submitted to the appropriate third party payer. Additional information can be found in the Pharmacy Operations Manual section 1704 (POM 1704).

Scan & Go (Scan & Go Stores Only)
Scan & Go is a unique program which enables customers to scan merchandise into an electronic basket in the Walmart application on their Smartphone. These customers may bag the merchandise themselves as they shop. The customer will then transfer their electronic basket to the register in order to complete the transaction. Payments will be made at the register, not on the phone. Comprehensive program information is available on the WIRE for stores live on the program.



WM-OSBORNE0000240



| | |
|---|---|
| | Due to the uniqueness of this program, caution must be used when encountering possible apprehension situations for Scan & Go customers. |
| | Below are a few situations which may be encountered with this program. |
| | • Customers may bring their own shopping bag(s) into the store to use while shopping (re-useable bags, freezer bags, plastic bags, etc.); therefore one may observe a customer putting merchandise into their bags as they shop. |
| |      o Be cautious when identifying suspicious behavior. A customer who appears to be concealing merchandise may simply be bagging an item after scanning it with their smartphone. |
| |      o All five AP-09 elements are required before an approach or apprehension can be made. |
| | • After shopping and while processing payment at the checkout, customers MAY be systematically selected for a Quality Check. Only system generated Quality Checks are permitted. |
| |      o The customer, unless systematically flagged for a Quality Check, will process payment and depart the store. |
| |      o If systematically selected for a Quality Check, the designated associate at the checkout area will conduct the Quality Check. If, during the Quality Check, merchandise is found that is not part of the customer's current transaction, the associate conducting the Quality Check will explain to the customer that particular item was not on the transaction and will politely ask if the customer wants to add the item. If so, the item is simply added to the transaction. If not, the item is returned to the shelf and the Quality Check continues as systematically directed. |
| |      o All five AP-09 elements are required to make an approach or apprehension. Finding items(s) that have not been paid for during the Quality Check does not justify a shoplifting approach or apprehension. |
| | • *A Customer is observed selecting merchandise and clearly and obviously is not scanning some or all the item(s) for payment.* |
| |      o If the customer proceeds to checkout and processes payment, no further action is necessary or required. |
| |      o All five AP-09 elements are required before an approach or apprehension can be made. |
| Conducting Surveillance In Order To Establish That An Unlawful Taking Has Occurred | <u>Policy</u><br><br>*The purpose of surveillance is to observe a Suspect engage in an "unlawful taking."*<br><br>An "unlawful taking" has occurred when one or more Authorized Associates have observed a suspect taking the merchandise of a facility by committing each of the five elements. The five elements are alert signal, selection, concealment/dispossession, continued possession of |



merchandise, and passing the last point of sale.

Note: By verifying that a suspect has completed the five elements, an authorized associate establishes the reasonable basis to approach and investigate the unlawful taking of merchandise by that suspect.

| The Five Elements | 1. **Alert Signal**<br>A report of suspicious behavior<br>2. **Selection**<br><br>The suspect must select and take possession of the facility's merchandise.<br><br>Note: A customer may bring personal property into a facility in order to compare that item to similar Walmart merchandise. For example, a customer may take an I-Pad, cell phone or toner cartridge out of a purse and compare it to merchandise on a shelf. An authorized associate should not mistake this action for selection.<br><br>3. **Concealment/Dispossession**<br><br>The suspect must either conceal or reasonably demonstrate the intent to steal the merchandise in their possession. An example of concealment is when a suspect places a box of video games into a backpack. An example of dispossession is when a suspect removes a tag from a leather coat.<br><br>Note: In some states, a merchant's observation of a suspect concealing merchandise is sufficient to establish the reasonable or probable cause legally needed to investigate or detain that suspect. Walmart, however, requires that all five elements of an unlawful taking be observed by an authorized associate prior to approaching a suspect.<br><br>Generally there are two types of shoplifters: amateurs and professionals. Both use common methods of concealment or dispossession in order to further their acts of theft. However, all shoplifters share the same objective: to illegally remove merchandise from the facility without detection. Below are common examples of concealment and dispossession by shoplifters: |
| --- | --- |
| | • Merchandise concealed in factory sealed boxes. Shoplifters may remove the contents of a factory sealed box and replace the contents with merchandise of greater value. Shoplifters may even tape or glue the box shut making it appear factory new. Then they purchase the item, and pay for the lower priced item rather than the price of the item actually located on the box.<br><br>• Merchandise Concealed in Clothing. The use of modified clothing to assist in concealment of merchandise is common. |



Coats, jackets, and sweaters may have modified interior pockets large enough to hold merchandise. Shoplifters may also conceal items by stuffing items into their pants, skirts, shirts, underwear, and shoes. A shoplifter may even use elastic girdles placed around the waist or thighs, or lodge merchandise between their legs. The shoplifter may also conceal apparel items under their own outer clothes and attempt to wear the merchandise out of the facility.

Other shoplifters may simply put on an apparel item and leave without paying for it.

Note: Authorized associates shall not instruct a suspect to lift clothing or disrobe in an effort to locate concealed or stolen merchandise. Do not permit suspects to disrobe in order to demonstrate they are not in unlawful possession of facility merchandise. Walmart associates may never pat-down, frisk, or search a suspect. Only law enforcement may search a suspect's person.

- Merchandise concealed in trash cans or plastic storage containers. Shoplifters may conceal large or small amounts of merchandise within a trash can or plastic storage container and pay only for the trash can or storage container.

- Merchandise concealed in purses. Shoplifters may use their own purses or remove a purse from a facility rack to conceal items. Often, a shoplifter will separate the small items away from other items by placing the small items next to a purse located in the child carrier portion of a shopping cart. An over-sized purse or a purse that appears "flat" or empty can become a storage place for unpaid merchandise.

  Note: Never search the belongings of a suspect, such as purses, bags, or other containers. Even if a suspect requests an associate to reach into or open a suspect's belongings, the associate shall not empty, reach into, or otherwise search the belongings of a suspect.

- Merchandise concealed in baby strollers. A baby stroller offers a unique way for shoplifters to conceal and steal merchandise. The shoplifter may conceal items of merchandise in the stroller by covering the items with a blanket or by hiding them under a child.

  Note: Walmart associates may not take control of a stroller containing a child or separate a child from a parent/customer in order to further an investigation.

- Merchandise concealed in shopping bags. A popular technique



is to conceal merchandise within a shopping bag before leaving the facility. These bags can be shopping bags brought in from competitors, bags obtained from purchases made at a satellite register, or even empty Walmart bags brought into the facility and concealed on the suspect. Some shoplifters will take a fraudulent receipt; either brought in or found in the facility, and staple it to the bag. Other types of bags may also be used such as diaper bags and backpacks.

- Other devices for concealing merchandise. Professional shoplifters may use any number of devices to conceal or steal merchandise. For example, shoplifters may use fake arm slings, empty boxes, trash cans, newspapers, umbrellas or even wheel chairs to conceal merchandise.

- Tools/ techniques used to avoid EAS detection
  - Shoplifters may use tools or "theft detection device removers" to remove theft detection tags or devices from merchandise.
  - Pocket knives and box cutters may be used to remove an item from packaging containing an EAS tag.
  - Shoplifters may carry bags or containers that are laminated, coated or lined with foil in an attempt to defeat EAS systems.

- Ticket/price switching. Professional shoplifters may attempt to remove a price tag or bar code from one item of merchandise and switch it with a tag on a higher priced item. If approached or prosecuted, the suspect may state that he or she selected the subject item with the price tag already in place and claim an associate mislabeled the item. These incidents may lead to a case of "your word against their word." With that in mind, if you observe ticket/price switching, consider requesting an associate to exercise aggressive hospitality in order to deter the activity or conduct a price check at the register.

  Note: In order to prove the criminal intent of suspects that engage in this type of activity, check for additional witnesses, CCTV camera footage or PTZ footage of the act of ticket/ price switching.

- Impersonators. A shoplifter may assume the identity of another individual and commit theft. Sometimes an impersonator may act as an agent of a supplier pretending to remove merchandise for credit. Professionals may go as far as dressing in uniform styled clothing, attempt to wear a company name badge or vest and claim to be transferring merchandise to another facility.

WM-OSBORNE0000244



- Restroom/fitting room concealments. A shoplifter may select merchandise and take it to a restroom or fitting room for concealment. In many cases, it is difficult to determine if the Suspect has continued possession of the merchandise. Pro-active customer service should be exercised rather than a shoplifting investigation or detention. If possible, prevent the suspect from entering the fitting room or restroom with merchandise by simply stating that merchandise should not be taken into the restroom/ fitting rooms.

  Note: Customers maintain an expectation of privacy while inside a restroom or fitting room. Do not approach, investigate, or detain a suspect within a restroom or fitting room. Further, if a suspect enters a restroom or fitting room with selected merchandise, visual contact has been lost and all five elements must be re-established. Video surveillance is NEVER permitted within a restroom or a fitting room.

4. Continued Possession of Merchandise

*After observing concealment and/or dispossession, the authorized associate must maintain visual contact with the suspect in a manner sufficient to conclude that the suspect still has possession of the merchandise, until they pass the last point of sale.*

The use of the term "sufficient to conclude" acknowledges that in some circumstances it will be impossible to maintain visual contact with a suspect throughout every second of the surveillance; however, visual contact must be sufficiently rigorous and continuous so that a reasonable person would expect to find the merchandise in the possession of the suspect at the time the suspect is approached. You must use common sense, experience, and good judgment to decide whether surveillance has been sufficiently interrupted to allow the suspect an opportunity to abandon the selected merchandise unobserved. If the suspect has had a reasonable opportunity to abandon the selected merchandise unobserved, you are no longer in a position to conclude that the suspect has continued possession and may not approach the suspect however; you may approach to provide pro-active customer service.

Example: An assistant manager has observed selection and concealment, is following a suspect down an aisle. Just as the suspect turns the corner, an insistent customer stops the assistant manager and asks a question. The encounter takes just 15 seconds. The assistant manager then proceeds down



the aisle, turns the corner, and tries to find the suspect by looking down aisles as he passes by. The assistant manager eventually locates the suspect, who is now midway down an aisle, three rows past where the assistant manager last had visual contact with the suspect. The suspect now appears to be studying merchandise in that aisle. The total interruption in visual contact was no more than 45 seconds. Result: The suspect has had a reasonable opportunity to abandon the concealed merchandise unobserved. The assistant manager can no longer conclude that the suspect still has possession of the merchandise.

Note: If you ever come to reasonably doubt that the suspect still has possession of the selected merchandise, you may not approach the suspect, unless another unlawful taking is observed.

5. Passing Last Point of Sale

*The suspect must pass the last point of sale, fail to pay for the merchandise, and enter the vestibule or final point of exit. If a sidewalk sale with a register outside the vestibule occurs, then the store must work with the MAPM to establish a protocol for the duration of the sidewalk sale.*

Criminal intent is more easily established in court when evidence is presented demonstrating that a suspect, in addition to concealment or dispossession, passed the last point of sale without paying for merchandise.

<u>Confirming All Five Elements Are Present</u>

Authorized associates must establish that a suspect has completed all five elements of an unlawful taking prior to approaching the suspect for investigation. These five elements help 1) establish the reasonable basis to believe a suspect is attempting to unlawfully remove merchandise from the facility and 2) justify the approach of a suspect for investigation.

If you lack concealment/dispossession or continued possession of the merchandise, exercise pro-active customer service prior to the customer reaching the last point of sale. In such a situation, there must not be any accusation of theft, concealment, or any other statement made that would suggest the suspect is attempting to shoplift.

Note: Under no circumstances does the word of an associate not fitting the definition of an "authorized associate" in the AP-09 policy or a customer establish any of the elements.

WM-OSBORNE0000246



Example: A department manager in electronics informs you that she witnessed a customer conceal two DVDs under his jacket. You maintain visual surveillance and see no other unusual activity. The customer passes the last point of sale and enters the vestibule. You may not approach the individual as you did not witness either selection or concealment and you many not rely on the word of an hourly department manager to establish the two elements. This department manager is not an authorized associate as described in AP-09.

Example: A customer in the health and beauty aids section of your facility tells you that a customer in a large coat is "stuffing his pockets with merchandise in the next aisle." You proceed to the next aisle and see a customer wearing a large coat. As you observe this customer, you do not notice any suspicious behavior; the customer heads to the register, pays for his items, and leaves the facility. You may not approach this customer because you did not witness selection or concealment and you may not rely on the word of the customer to establish these two elements.

December 28, 2017

WM-OSBORNE0000247



| Additional Authorized Methods | Collaboration Among Authorized Associates |
|---|---|
| | *Authorized associates may surveil a suspect alone or work with other authorized associates to conduct surveillance first hand. Walmart video surveillance may only be used to obtain the five elements required by this policy when working with another authorized associate.* There are two methods by which authorized associates may collaborate on the five elements. |
| | **Pan/Tilt/Zoom ("PTZ")** Surveillance |
| | Authorized associates operating PTZ equipment may obtain three of the five elements of an unlawful taking: alert signal, selection and concealment. The PTZ operator may radio these observations by "walkie" to another authorized associate on the salesfloor who may assist in the continued surveillance and investigation of a suspect. |
| | Example: You are working in a facility with a PTZ camera system and the operator of the system, who is an authorized associate, summons you and states they just witnessed, and recorded on video, the alert signal, selection and concealment of a video gaming system. You find the individual by the instructions of the PTZ operator, maintain visual surveillance, observe the suspect maintain continued possession of the merchandise, and observe the suspect pass the last point of sale and enter the vestibule or last point of exit. In this case, you are in collaboration with another trained authorized associate who also maintained video documentation of the first three elements. The PTZ operator assisted you in maintaining surveillance allowing you to properly approach a suspect and investigate the matter. |

December 28, 2017

WM-OSBORNE0000248



Note: Remember, observing the actions of a shoplifting suspect via PTZ CCTV requires that the video of the elements must be preserved as evidence. The video images of the suspect must be transferred to a CD and maintained in the investigation file of the suspect.

Visual Surveillance By Multiple Associates

Authorized associates collaborate during surveillance of a suspect to establish that the suspect has completed all five elements. The following types of collaboration are authorized:

- A report of suspicious behavior (alert signal) by any associate may be sufficient to begin surveillance of a suspect. However, you may not rely on the word of an unauthorized associate to establish any of the remaining four elements.
- An authorized associate who has personally observed selection and concealment/dispossession may hand off the suspect to another authorized associate for the purpose of verifying continued possession. Additionally, authorized associates may join the surveillance and approach.

The authorized associate who approaches and investigates the suspect is responsible for writing the investigative report. The investigative report must identify all associates who collaborate and specify which associates verified which elements.

The Accomplice

Professional shoplifters frequently operate with one or more skilled accomplices. An accomplice may distract associates, while the professional thief goes to another area of the facility to begin the process of stealing merchandise. A distraction may occur at any time during your attempt to establish the five elements. Accomplices may create disturbances, such as:

- Pretending to faint.
- Pretending to shoplift.
- Acting as a shield to prevent visual surveillance.
- Asking questions about merchandise.
- Requesting your assistance away from the actual shoplifter.

Do not approach an accomplice, unless the accomplice actively participates in both the selection and concealment/dispossession of merchandise and remains in the company of the suspect as the suspect passes the last point of sale and enters the vestibule. In other words, for the purposes of the five elements, the accomplice must be working so closely with the suspect, that the only meaningful difference between the

WM-OSBORNE0000249



two at the time of approach is that the suspect has possession of the merchandise and the accomplice does not.

Example 1: An APA observes two suspects loitering at an aisle, looking around nervously. Suspect A suggestively, but discretely points first at an item and then at suspect B's pocket. Suspect B nods, "yes." Suspect B spreads her jacket slightly to cover suspect A, as suspect A puts the item in her pocket. They immediately proceed together, past the cash registers to the vestibule where the APA approaches. Result: APA properly approached both because they actively participated in the selection and concealment of the merchandise and both accompanied the merchandise past the last point of sale into the vestibule. The only practical difference is one carried the merchandise and one did not.

Example 2: Same as above except after concealing the item, the suspects part ways and proceed separately past the last point of sale towards different exits. Both are approached. Suspect A has merchandise; suspect B does not. Result: Suspect A was properly detained because all five elements were observed. Suspect B was not properly approached because authorized associates did not observe suspect B remain in the company of the Suspect A as the suspect passes the last point of sale and enters the vestibule.

Note: Be observant of suspects who may pass stolen merchandise to a second person. When you see partners in action, always maintain visual surveillance of the suspect who possesses the merchandise.

Only accomplices that actively participate in the unlawful taking should be detained and entered into APIS as suspect. Remember that a suspect may conceal or steal merchandise without the knowledge of the person accompanying the thief. If the person accompanying the suspect did not actively engage in the unlawful taking, they should not be approached.

| Approaching & Investigating Suspects | Policy<br><br>*An authorized associate may approach a suspect to investigate an unlawful taking only if an authorized associate has observed all five elements in accordance with this policy. At least one other associate (must be 18 years or older) must be present as a witness during the approach and any resulting investigation. The associate witness must remain a safe distance from the approach and investigation while maintaining the ability to see and hear the interaction between the authorized associate and the suspect. During an approach and investigation, the associate witness is not required to be the same gender as the suspect. However, if the suspect is detained, an associate witness, 18 years or older and the same gender as the suspect, must be present from the time of detention until the suspect leaves the store. The purpose of the investigation is to verify that the suspect is in possession of the facility's merchandise, has not paid for the merchandise, and does not* |
| --- | --- |

December 28, 2017

WM-OSBORNE0000250


*have a reasonable explanation for passing the last point of sale and entering the vestibule or final point of exit.*

<u>Approaching the Suspected Shoplifter</u>

It is critical that you approach each suspect properly, in a reasonable manner that is appropriate to the circumstances. Below are step-by-step instructions on how to approach a suspect in a manner that maintains respect for the individual and will minimize the possibility of a verbal or physical confrontation.

There is no way to know how each approach will unfold. Accordingly, to deal with the varying circumstances you may encounter, it is essential that you always address each approach with the proper attitude:

- Demonstrate Respect for the Individual.
- Be Sure.
- Be Firm.
- Be Positive.
- Be Professional.
- Be Polite.

The authorized associate investigating the unlawful taking must follow these steps:

- Approach the suspect with an associate witness present.
- Disclose the authorized associate's name and job title to the suspect.
- Explain the reason that the authorized associate approached the suspect.
- Attempt to verify that the suspect is in possession of facility merchandise that was not purchased.
- Listen to any explanation the suspect may offer for having possession of the merchandise.
- Decide whether to detain the suspect, in accordance with this policy, based on a reasonable evaluation of the available facts.

Associates should NEVER imply physical touching will be utilized when investigating or detaining a suspect. For example, it is improper to make a statement to a suspect such as, "We could do this the easy way or we could do this the hard way." This implies the potential of a physical confrontation if the suspect does not comply. The authorized associate should attempt to gain voluntary compliance from the suspect by explaining that we are investigating observations of the suspect within the facility.

December 28, 2017

WM-OSBORNE0000251


**Step One: Approach the Suspect**

- Do not approach unless an associate witness over the age of 18 is present.
- Address the suspect politely and directly.
- Never verbally accuse the suspect of a criminal act while approaching.

**Step Two: Disclose the Authorized Associate's Name and Job Title to the Suspect**

- Display Walmart name badge.
- Be discreet when addressing the individual.
- The following is an example of an identification statement.
  - "Sir/Ma'am, my name is '_____'. I am an asset protection associate for this Walmart facility."

Note: Never embarrass, harass or intimidate a shoplifting suspect.

**Step Three:  Explain the Reason for Approaching the Suspect**

- "I would like to discuss your actions that I observed in the _____ department or inside the facility."

**Step Four: Attempt to verify that the Suspect is in Possession of Facility Merchandise for which the Suspect Has Not Paid**

Ask the suspect for the merchandise that has not been paid for. The suspect may admit to the theft and voluntarily relinquish the merchandise. On the other hand, if a suspect questions or takes issue with your reason for approach and investigation, it may be necessary to discreetly identify the merchandise which is the subject of the unlawful taking and identify the location of the item on the suspect in order to encourage cooperation.

Note: If the suspect does not voluntarily relinquish the merchandise subject to the unlawful taking, politely and discreetly request the suspect to voluntarily give the merchandise to you. You should attempt to obtain at least one item of merchandise prior to directing the suspect to the detention office, if it will not result in embarrassment to the suspect, based on the location of the concealed merchandise. It is not necessary to obtain every single item of merchandise outside of the facility. Keep in mind, the suspect may relinquish the merchandise voluntarily once inside the facility during processing or to local law enforcement.

December 28, 2017



Example: At the time of the approach, you reasonably believe that the suspect possesses concealed merchandise inside their shirt. You may not demand that the suspect remove his or her clothes. In fact, you should not permit suspects to disrobe in order to demonstrate they do not have selected merchandise. If a suspect voluntarily disrobes or attempts to disrobe, you must immediately instruct the suspect to clothe themselves.

Step Five: Listen to the Explanation the Suspect May Offer for Having **Possession of Facility's** Merchandise or any Other Aspect of the Unlawful Taking

If the suspect would like to discuss this matter with you, let them explain. The suspect may be able to explain his or her actions and demonstrate that the incident is a misunderstanding. Offer to discuss the matter away from public view. Remember, it may only require a limited investigation to verify a suspect's explanation. For example, a suspect may produce a valid receipt for the subject items, the suspect may prove he or she owns the subject item or the suspect may demonstrate that the subject of the unlawful taking is not merchandise sold by Walmart.

Note: If the investigation at any point reasonably leads the authorized associate investigating the unlawful taking, to doubt that the suspect has unlawful possession of the facility's merchandise, the authorized associate must terminate the investigation.

Step Six: Decide Whether to Detain the Suspect, Based on a Reasonable Evaluation of the Available Facts

If you reasonably doubt that the suspect unlawfully possesses Facility merchandise or the suspect demonstrates a misunderstanding, you must terminate the investigation. The following is an example of a statement to be made in a situation when the authorized associate decides to terminate the investigation and release the suspect:

"Thank you for your time and your cooperation. We regret any inconvenience."

You should make no further comments without discussing the matter with your supervisor. Facility management and your market asset protection manager must be contacted immediately regarding any such customer contact. If unable to contact your MAPM, you must report the event to the regional asset protection director (RAPD).

December 28, 2017



If you are asked by the individual to give your name, simply state, "My name is_ . I am an associate of Walmart's Asset Protection Division. My supervisor's name is_____. He/she can be contacted by calling_____".

An Investigative Report, concerning all details of the event, must be completed immediately and forwarded to your market asset protection manager. This report includes any statements from witnesses present during the initial customer contact.

*If you are aware or become aware of a detention or attempted detention, which results in physical contact between a customer and an associate beyond physical redirection as defined under Authorized Methods of Detention in the AP-09 policy, you are required to immediately report the incident to the market asset protection manager and regional asset protection director for the facility.*

PUT PEOPLE FIRST. Protecting the physical well-being of Suspects, customers, and Walmart associates is your first priority. Only non-aggressive methods may be used when investigating suspects. To minimize the risk of physical injury to associates, customers and suspects:

- Maintain a calm, confident, and professional demeanor.
- If at any time it appears that the suspect is under the influence of drugs or alcohol, the suspect must not be approached. If at any time during an approach or investigation it appears that that the suspect is under the influence of drugs or alcohol, all associates must disengage from the situation, withdraw to a safe position and contact law enforcement.
- If the suspect is believed to possess a weapon, the suspect must not be approached. If during an approach or investigation, it becomes apparent that the suspect has a weapon or brandishes or threatens use of a weapon; all associates must disengage from the situation, withdraw to a safe position and contact law enforcement.
- If at any point the suspect or any other involved person becomes violent, disengage from the confrontation, withdraw to a safe position, and contact law enforcement.
- If at any point the suspect or any other involved person exerts physical resistance, associates may only defend themselves or others to the extent necessary to disengage the suspect and withdraw from the situation. After disengaging, associates should contact law enforcement.
- During the approach, maintain enough distance from the suspect and any other involved parties to ensure your safety.
- The use of any object or equipment to limit or control the movements of the suspect or to block the suspect from leaving the facility is not allowed.

If the investigation at any point reasonably leads the authorized associate investigating the unlawful taking to doubt that the suspect has unlawful



possession of the facility's merchandise, the authorized associate must terminate the investigation. See state specific drop down box within the AP-09 policy for state specific information that may apply.

Associate Witness is Required in Order to Approach

After establishing all five elements, an authorized associate may approach a suspect to investigate an unlawful taking, but only if at least one other associate is present. Another authorized associate or a facility management associate is preferred to be a witness. Associates under the age of 18 may never serve as a witness. Having a witness enhances the safety of all persons involved because a suspect is less likely to become violent or create a disturbance. The presence of the witness also enhances the overall integrity of the investigation because the witness can corroborate the conduct of other associates and refute any false allegations from the suspect. Associate witnesses must remain a safe distance from the approach and investigation while maintaining the ability to see and hear the interaction between the authorized associate and the suspect.

Note: You should establish a code with your facility that can be communicated via "walkie" which will alert management that an investigation of a suspected shoplifter is in progress and that a witness is needed for the approach of the suspect.

Evaluating the Potential for a Hostile Confrontation Before Approaching

Authorized associates should be alert for behavior that suggests that an approach of a suspect could turn hostile. Although not exhaustive, any of these examples of behaviors might indicate a potential violent situation:

- The suspect is accompanied by other individuals.
- The suspect's attitude or demeanor suggests the suspect might react with hostility. Factors that might be considered include tone of voice, facial expressions, physical mannerisms (such as clenched fists), or a bold, almost provocative failure to hide the fact that the suspect is stealing.
- Pay attention to suspect's eyes. If they are looking for an exit strategy or appear to be surveying the situation, they may be making a determination on how to react.
- Be aware of any signs that the suspect may be under the influence of alcohol or intoxicating drugs that would diminish their normal inhibitions. Examples of warning signs include: slurred speech, loud or boisterous behavior, bloodshot or watery eyes, erratic physical mannerisms, or the smell of alcohol.
- The suspect ignores an authorized associate during the approach and walks away.



- The suspect possesses any item that could be used as a weapon, such as a knife, screwdriver, box cutter, etc.
- The suspect engages in conduct or makes statements that suggest or imply the suspect may be carrying a weapon. For example, the suspect refuses to remove his or her hands from their pockets.

Note: If the suspect is believed to possess a weapon, the suspect must not be approached. If during an approach or investigation, it becomes apparent that the suspect has a weapon or brandishes or threatens use of a weapon; all associates must disengage from the situation, withdraw to a safe position, and contact law enforcement.

If at any time it appears that that the suspect is under the influence of drugs or alcohol, disengage from the situation, withdraw to a safe position, and contact law enforcement.

A weapon includes:

Weapons by Design: A weapon by design is an instrument that was designed for the purpose of seriously injuring or killing human beings, such as a handgun, switchblade or bomb.

Weapons by Use: A weapon by use is an instrument that was not designed for the purpose of injuring or killing human beings, but which a suspect brandishes or uses for that purpose. For example, a suspect could use a baseball bat, box cutter, screwdriver, scissors, kitchen knife or even an ordinary steam iron.

Note: Verbal threats or insults are not justification to utilize physical means of self-defense. However, if a suspect or other individual makes threats or takes actions that create a reasonable expectation of physical harm to the associate, the associate must disengage from the suspect.

Suggested Countermeasures to Diffuse Hostile Situations (De- Escalation)

- Always engage the suspect with a calm, confident and professional tone.
- At least one other associate (must be 18 years or older) must be present as a witness during the approach and any resulting investigation. Be prepared for the worst when conducting an approach. Maintain enough distance (arm's length) from the suspect and any other involved parties to ensure your safety.
- Make initial contact with the suspect face to face.
- Do not place yourself directly in front of the suspect. If possible, position yourself to the front of the suspect by at least one step to the side.

December 28, 2017

WM-OSBORNE0000256



| | |
|---|---|
| | • Never be dishonest, but minimize the consequences that the suspect is about to face.<br>• Be aware of your surroundings (who and what is around you).<br>• Minimize any potentially dangerous objects or persons from the area.<br>• Summon local authorities pursuant to AP-09.<br><br>Note: Terminate the approach or detention of a suspect whenever you come to believe that the circumstances justify terminating the approach or detention. Remember to use caution. Make your first priority your safety and the safety of other associates, customers and the suspect. |
| Detention Policy | *If an authorized associate investigating an unlawful taking determines that a suspect has stolen merchandise from the facility, the authorized associates may detain the suspect, in a reasonable manner, for a reasonable period of time, using only those methods of detention authorized in this policy ("Authorized Detention Methods"). The purpose of detention is to enable an authorized associate to complete the investigation, retrieve the facility's merchandise, and/or refer the suspect to local law enforcement authorities.*<br><br>*Authorized associates must follow AP-09 in determining whether detention is authorized and the manner in which to proceed.*<br><br>Remember, protecting the physical well-being of Walmart associates, customers and suspects is your first priority.<br><br>Authorized Detention Methods<br><br>The following methods of detention are authorized:<br><br>Request: *Authorized associates may ask a suspect to follow them to a detention area (no physical contact).*<br><br>Verbal Command: *Authorized associates may instruct a suspect to follow them to a detention area (no physical contact).*<br><br>Physical Redirection: *Initially, an authorized associate should motion in a non-aggressive manner in the direction they would like the suspect to proceed. For example, an open hand on the arm, shoulder or middle of the back of the suspect. If that is unsuccessful, the authorized associate may utilize respectful, light physical contact in directing the suspect toward the AP office or other location.* |

December 28, 2017

WM-OSBORNE0000257



Request: a Verbal Request for Voluntary Cooperation

This is the first authorized method of detention. A request means verbally securing the consent of the suspect to cooperate in an investigation and/or to accompany the authorized associate to any area of detention.

Example: *"Sir, please accompany me to discuss this matter further?"*

Verbal Command: a Verbal Instruction to Cooperate

This is the second authorized method of detention. A verbal command means that an authorized associate has orally directed suspect to take some act or to proceed to a designated area of detention.

Example: *"Sir, you need to accompany me now to discuss this matter further."*

Physical Redirection: a non-aggressive physical redirection of the Suspect

This is the third authorized method of detention. Physical redirection means that Authorized Associates should motion in a non-aggressive manner in the direction they would like a suspect to proceed. If this is unsuccessful, the authorized associate may utilize respectful, light physical contact in directing the suspect toward the AP office or other location.

Example: An open hand on the shoulder, arm, or middle of the back of the suspect directing them toward the AP office or other location.

WM-OSBORNE0000258



| Limitations On Detention Of Suspects | Detention Specifics |
|---|---|
| | If at any point during the investigation or detention of a suspect, the authorized associate reasonably doubts that an unlawful taking has occurred, the authorized associate must terminate the investigation or detention. |
| | Example: An authorized associate puts the suspect under surveillance, when engaged in suspicious behavior. The associate should watch as the suspect completes the five elements of an unlawful taking. Pass the last point of sale, the authorized associate approaches the suspect and asks if he has an unpaid-for DVD in his right front pocket. The suspect denies taking any merchandise and voluntarily, without being asked, pulls both front pockets inside out. The suspect is not carrying any bags, there are no other pockets into which the DVD could logically fit, and the suspect is wearing a skin-tight tee shirt. There is a possibility that the suspect placed the DVD inside his waistline however, the associate's observation was that they suspect placed the DVD in his right front pocket. Even if the authorized associate is positive he saw the suspect place the DVD in his pants, the associate should release the suspect. Despite the associate's tight surveillance, the suspect may have abandoned the DVD without the associate noticing. |
| | *PUT PEOPLE FIRST. Protecting the physical well-being of Walmart associates, customers and suspects is your first priority.* |
| | *If a suspect is believed to be under the influence of drugs or alcohol, the suspect must not be detained. If at any time it appears a detained suspect is under the influence of drugs or alcohol, ensure that you, all other associates and customers disengage from the situation, withdraw to a safe position, and immediately contact law enforcement.* |
| | *If at any point, a detained suspect or any other involved person becomes violent, terminate your attempt to detain the suspect, disengage from the situation, withdraw to a safe position, and contact law enforcement.* |
| | *Example: A suspect is approached and immediately attempts or threatens to strike the authorized associate. The authorized associate must immediately disengage and withdraw from the situation without making any further attempt to approach or detain him or her. The authorized associate should document the unlawful taking and report it and the threatening behavior to law enforcement.* |

December 28, 2017

WM-OSBORNE0000259


*If a suspect is under the influence of drugs or alcohol, ensure that you, all other associates and customers disengage from the situation, withdraw to a safe position, and immediately contact law enforcement.*

*If at any point, a detained suspect or any other involved person becomes violent, terminate your attempt to detain the suspect, disengage from the situation, withdraw to a safe position, and contact law enforcement.*

> Example: A suspect is approached and immediately attempts or threatens to strike the authorized associate. The authorized associate must immediately disengage and withdraw from the situation without making any further attempt to approach or detain him or her. The authorized associate should document the unlawful taking and report it and the threatening behavior to law enforcement.

*If a detained suspect strikes or attacks any other person, associates may only defend themselves or others to the extent necessary to disengage a suspect, withdraw from the situation, and contact law enforcement.*

Associates are prohibited from striking or hitting a suspect for any reason, other than when absolutely required to defend themselves. To disengage from a situation, simply withdraw and go to a safe location.

> Example 1: Authorized associate approaches a suspect. The suspect yells, "Don't touch me!" and strikes the associate in the face, but takes no further action toward the associate. The associate must move away from the suspect to avoid further confrontation and call the police to report the assault.

> Example 2: Same as above. This time, however, the associate's back is to a wall and the suspect is advancing toward the associate with clenched fists. The associate may assume a defensive position, but must only engage in the least amount of physical confrontation necessary to protect him/her and must take advantage of the first opportunity to disengage from the situation and withdraw to a safe location.

*If a suspect is believed to possess a weapon, it becomes apparent that a suspect has a weapon, or brandishes or threatens use of a weapon, all associates must disengage from the situation, withdraw to a safe position, and contact law enforcement.*

If a suspect is observed using a knife or other sharp instrument during the concealment process and is believed to be in possession of that instrument after passing the last point of sale and proceeding to the vestibule or the last point of exit, the suspect should not be approached, investigated, or detained.

> Note: Some state laws permit the carrying of open or concealed

December 28, 2017



firearms. Associates should not immediately summon local law enforcement. The customer may be carrying a weapon pursuant to local state laws; however, if this customer completes the five elements of an unlawful taking and also possesses a weapon, associates should document the incident and then contact local enforcement. Such a suspect should not be approached by any associate.

*Suspects may only be processed in a private location inside the facility.*

*An associate, 18 years and older and of the same gender as the detained suspect, must remain with the suspect at all times.*

*NEVER search a suspect's belongings such as purses, bags, or other containers.*

If the suspect was observed concealing a number of items in their coat and voluntarily turns over a few items, but the authorized associate reasonably believes that more items are still concealed, law enforcement should be informed so that they can determine whether they will conduct any further search of the suspects' belongings.

*NEVER pat down, frisk, or search a suspect. Suspects who voluntarily disrobe or attempt to disrobe must be instructed to immediately clothe themselves. Only law enforcement personnel may search a suspect's person*

*ALWAYS HONOR a suspect's request for medical attention or other reasonable requests, such as water.*
If a suspect claims to need to take any prescription medication that they have on their person, ask that they do not take it until law enforcement or emergency medical personnel are present. Immediately ask the suspect if they would like emergency medical personnel to be summoned.

ALWAYS HONOR a suspect's request that law enforcement personnel be summoned.

ALWAYS HONOR a minor suspect's request that parents or a guardian be summoned.

ALWAYS SUMMON medical personnel if any person experiences medical distress.

TERMINATE a detention after one hour, unless the facility manager in charge, market asset protection manager or regional asset protection director authorizes continued detention. Do not exceed the maximum period of detention allowed by state law, even if shorter than one hour.

TERMINATE the detention whenever a salaried manager in a position of authority greater than that of the authorized associate directs the


| | authorized associate to terminate the detention, regardless of reason. |
|---|---|
| | NEVER push, kick, or strike a suspect unless it is done in self-defense and only to the extent necessary to disengage a suspect, and withdraw from the situation. |
| | NEVER tell suspect they cannot leave and/or that they are required to remain at the store. |
| | NEVER use a chokehold or apply pressure to a suspect's head or neck. |
| | NEVER place a suspect in a prone position (with the chest down and the backup), unless you are unable to safely disengage from an encounter and need to do so to prevent the suspect from committing a violent act. A suspect in the prone position should be constantly monitored and moved to a sitting or standing position as soon as reasonably possible. |
| | NEVER use any type of device to restrain a suspect. Suspects may not be detained with any restraining device such as belts, handcuffs or zip ties. |
| | NEVER attempt to physically re-capture a suspect who breaks free from physical restraint. |
| | NEVER pursue a fleeing suspect beyond 10 feet from the place they began to run regardless of being inside or outside the facility. |
| | PUT PEOPLE FIRST. Protecting the physical well-being of suspects, customers and Walmart associates is your first priority. Only non-aggressive methods may be used when investigating suspects. |
| | If you observe or become aware of this policy being violated you are required to report the incident to the regional asset protection director for the facility. |
| Pursuit of Shoplifting Suspects Prohibited | **Pursuit of Shoplifting Suspects Prohibited**<br><br>Authorized Associates and Associate Witnesses are prohibited from going beyond the facility's sidewalk to make an approach or to obtain additional information regarding a Suspect.<br>Example: A license plate, direction of travel, etc. even if law enforcement directs doing so.<br><br>• In the absence of a sidewalk the MAPM will establish a designated boundary not to extend into the crosswalk or parking area. |

December 28, 2017



Remember to put people first and remember the importance of safety. A suspect's vehicle may contain a weapon, may be a friend of the suspect, or it may begin moving.

- *DO NOT follow a suspect in the parking lot, even if directed by law enforcement.*
- *Do NOT attempt to re-capture a suspect who breaks free from restraint.*

*If an unlawful taking occurs and suspect is not detained, becomes violent, or flees, the authorized associate should contact law enforcement and enter the information into APIS as an incident.*

*DO NOT leave Walmart property to collect merchandise a suspect may have dropped or abandoned. Law enforcement should recover merchandise that has been dropped or abandoned off Walmart property.*

Withdrawal

*If a Suspect or any involved person becomes violent, all attempts to investigate and/or detain the suspect must discontinue and associates must disengage from the situation, withdraw to a safe position and contact law enforcement.*

*If a suspect is believed to possess a weapon or it becomes apparent that a suspect has a weapon or brandishes or threatens use of a weapon, all associates must disengage from the situation, withdraw to a safe position and contact law enforcement.*

*If a suspect strikes or attacks any other person, associates may only defend themselves or others to the extent necessary to disengage the suspect and withdraw from the situation. Law enforcement must be immediately contacted. Exercise good judgment to release suspects when unexpected facts arise.*

If at any time it appears that that the suspect is under the influence of drugs or alcohol, disengage from the situation, withdraw to a safe position and contact law enforcement.

If at any point during the investigation or detention of a suspect, the authorized associate reasonably doubts that an unlawful taking has occurred, the authorized associate must terminate the investigation or detention.

December 28, 2017

WM-OSBORNE0000263



| | |
|---|---|
| Prohibited Activities | NEVER threaten physical harm to, or direct profanity at a suspect. |
| | NEVER use any type of device to restrain a suspect. |
| | NEVER attempt to remove a suspect from a vehicle or attempt to block a vehicle that is exiting. |
| | NEVER use a weapon or any other physical implement to hit or strike a suspect. |
| | NEVER strike or hit a suspect, unless in self-defense and in the course of disengaging the suspect. |
| | NEVER use a chokehold or apply pressure to a suspect's head or neck. |
| | NEVER attempt to re-capture a suspect who breaks free from restraint. |
| | If you observe or become aware of this policy being violated, immediately notify your market asset protection manager and your regional asset protection director. If you are aware or become aware of a detention or attempted detention which results in physical contact beyond physical redirection between a customer and an associate, you are required to immediately report the incident to the market asset protection manager and regional asset protection director for the facility. |
| **Summoning Local Authorities** | Policy |
| | Authorized associates must summon local law enforcement authorities whenever: |
| | (a)    anyone involved in the investigation or detention of a suspect experiences medical distress or requests emergency medical services; |
| | (b)    a suspect requests law enforcement authorities; |
| | (c)    a suspect is violent or threatens violence or attempts to flee detention; |
| | (d)    a suspect has a weapon or brandishes or threatens use of a weapon Or |
| | (e)    the facility manager or other manager in charge of the facility at the time makes the decision to prosecute the suspect. |
| | If an unlawful taking is reported to an authorized associate and it is later verified that an unlawful taking did occur, the authorized associate must discuss the matter with and receive approval from the asset protection manager, facility manager, or other manager in charge before law enforcement is contacted. |
| | Refer to the Investigation and Detention of Shoplifters Policy (AP-09) for state specific information that may apply to summoning local authorities. |

December 28, 2017


### Communication with the Shoplifter Suspect

Because you are not Law Enforcement, you do not legally place a suspect under arrest and there is no need to "read the suspect their rights." During the processing phase, your goal is to quickly investigate the alleged act of theft in order to determine if there is sufficient evidence to prove guilt of the suspect beyond a reasonable doubt and/or to summon local law enforcement to the scene to investigate and/or prosecute the shoplifting suspect. Ask questions that will allow you to:

- Ascertain that stolen merchandise is possessed by the suspect.
- Identify the suspect.
- Investigate or substantiate the alleged act of theft.
- Recover the merchandise.
- Establish that the suspect committed an unlawful taking of Walmart merchandise.
- If elements of Organized Retail Crime (ORC) exist, complete the ORC interview form on the WIRE.

*Note:* Certain states limit the questions that merchants may ask a shoplifting suspect. Refer to the Investigation and Detention of Shoplifters Policy (AP-09) for state specific information.

Never lecture a suspect. Your purpose in interviewing the suspect is to investigate an attempt to unlawfully remove merchandise from our premises and to recover, in a reasonable manner, all of the merchandise taken from the facility.

### Recovery of the Merchandise

It is the preferred practice to recover at least one item of merchandise, prior to re-entering the facility, if it will in no way cause embarrassment to the subject based on the location of the concealment. Once in the asset protection room or designated detention room with the appropriate witness, attempt to recover the remaining merchandise. This should be completed prior to initiating paperwork in regard to the incident.

Give direction to the suspect to place all of the items they have not paid for on the table or desk. If the suspect refuses to produce the concealed merchandise, you may decide to call for law enforcement assistance.

If you performed a thorough investigation of the suspect, you should be prepared to prosecute the suspect if you contact the authorities.

Hold all recovered merchandise for later processing. Refer to section 400 for proper evidence handling.

> *Note:* Remember, if, at any time, you realize during the processing of the suspect that he or she did not shoplift merchandise from Walmart, discontinue the detention of the suspect and immediately release the suspect.



### Investigative Report

Collect information for the investigative report. Tell the suspect that you are going to need their full name and correct address. Tell them, "Before you give it to me, be aware that I will verify the information that you give me." At that point, ask the suspect to provide you with photo identification (ID) and verify the information on the ID by asking the individual questions as you fill out your report.

Document all aspects of the incident including the actions that show the suspect engaged in suspicious activity and each of the five elements

### Photographing of Suspects

Your facility should take photographs of every shoplifting suspect, who will be prosecuted, unless the shoplifting suspect is a juvenile or appears to be a juvenile, and picture identification is not available.

- Always show respect for the individual when taking photographs.
- Do not photograph shoplifting suspects under the age of 18. If you reasonably suspect a person is under 18 and you are unable to determine their age from a photo ID, do not take their photo.
- All shoplifting suspects to be photographed must complete the photography consent form. If the shoplifting suspect refuses to sign the consent form, then explain it is the policy of Walmart. If the shoplifting suspect continues to refuse, place a check in the box on the consent form, stating the shoplifting suspect refuses to sign the consent form, and print the shoplifting suspects name, print your name and sign your name, then file in the case folder pertaining to this case. (If a shoplifting suspect refuses to have their photograph taken you may use a DVR captured photograph for the file. The DVR captured photograph may be taken from any DVR camera shot. Any photographs captured from any shoplifting suspect, must be cropped or restricted to show only the person who is believed to be the shoplifting suspect. In a situation where this is not possible, efforts must be made to disguise the images of other individuals so that they cannot be recognized.)
- Shoplifting suspects must be photographed and processed in the same room.
- A witness must be present when a photograph is taken.
- Photographs must only be taken of shoplifting suspects who will be prosecuted.
- All shoplifting suspects must be photographed from the waist up, while they are standing and facing the camera against a plain wall.
- Photographs which are printed from a DVR, must be secured in the asset protection office in a locked filing cabinet and not removed from the office without the approval of the market asset protection

WM-OSBORNE0000266



manager. When sharing photographs, it should be indicated the reason for sharing the photo is for identification purposes, or to alert others of suspect activity. Each hard copy photograph must be labeled to include the shoplifting suspect's name, date of detention, APIS case number, printed name and signature of associate who made the photograph.

- DVR stores must not keep copies of photographs on file; they should all be uploaded into APIS and printed only if providing the photograph to law enforcement to file charges against a suspect or when requested by law enforcement. If the printing of a photograph is not related to current apprehension, the law enforcement request form must be utilized.
- Photographs must never be displayed for public view inside or outside the asset protection office.

<u>Reasonable Detention Period</u>

Remember; you may only detain the suspect for a reasonable period of time, depending on the circumstances. If the police do not arrive within one hour after attempted contact, telephone them again and note the time of the second call. Based on the information received in the second call, consider the feasibility of further detention. Request the MAPM or facility management to make a decision regarding further detention. If the decision is made to release the suspect, make every attempt to verify the suspect's identity prior to their release.

> *Note:* Whenever a salaried manager in a position of authority, greater than that of the authorized associate, directs the authorized associate to terminate the detention, regardless of the reason, the request must be followed through.

> *Note:* If the police do not arrive within a reasonable period of time or within the requirements of the state, the suspect may be told that it has been (the amount of time) since the police were summoned and unknown how much longer it will be until police arrive. If the suspect asks if he/she can leave, let them know that WM cannot advise them of whether they can, but that all of the information surrounding the incident, including their contact information will be provided to the police to support criminal charges. Document this communication and whether the suspect chose to leave.

<u>Suspect Request for Medical Attention</u>

In some cases, a suspect may inform you that they feel ill and request medical attention.

Immediately call for assistance, even if you feel they are being untruthful. Should the suspect request a glass of water, or to use the restroom, you

WM-OSBORNE0000267



| | |
|---|---|
| | should make every effort to accommodate them. While you should be cautious to ensure that the suspect does not try to harm themselves or others, you should attempt to grant such reasonable requests.<br><br>Civil Recovery<br><br>Refer to section 200 of the Investigation and Detention of Shoplifters Guide Policy (AP-09) for state specific information. |
| Prosecuting Shoplifters | Policy<br><br>*The facility should prosecute a suspect only if he or she believes in good faith that the facility possesses sufficient evidence to prove guilt of the suspect beyond a reasonable doubt and:*<br><br>*A*<br>*The retail value of all merchandise recovered exceeds $25.00, and the suspect is at or between the ages of 16 and 65.*<br><br>*OR B*<br>*Except where prohibited by state law, a suspect between or at the ages of 16 to 65 fails to produce a valid government I.D. or school I.D., regardless of the value of the merchandise recovered.*<br><br>*OR C*<br>*The suspect is a repeat shoplifter at a Walmart facility, regardless of the value of the merchandise taken or age of the suspect.*<br><br>*OR D*<br>*The suspect committed, or threatened violence, regardless of the value of the merchandise or the age of the suspect.*<br><br><br><br>Signing the Criminal Complaint<br><br>When the decision is made to prosecute a suspect, contact the local authorities. Always allow local law enforcement to conduct an independent investigation of the incident. When summoned to the facility, the officer may elect to issue a citation to the subject. This citation is handled much the same way that a traffic citation is handled. The suspect is released after the officer obtains a signature on a promise from the suspect to appear in court. The signing of the criminal complaint is crucial. Proceed on the assumption that it is the responsibility of the authorized associate who made the detention to ensure the complaint is signed. If an oversight occurs and the complaint is not signed, the charges against the suspect could be dismissed and the suspect may consider filing a future civil suit against you and the company. |



*Note:* In any statement or writing provided to law enforcement, Walmart associates must always provide accurate, truthful, and factual information.

Once charges have been filed, only a vice-president or a senior director of Walmart asset protection can authorize recommending the dismissal of those charges to prosecuting authorities.

> *Note:* Generally "victims" of crime, such as Walmart, cannot automatically dismiss or drop charges filed against a person. This is the decision of the prosecuting authorities.

*If an unlawful taking is reported to an authorized associate and it is later verified that an unlawful taking did occur, the authorized associate must discuss the matter with and receive approval from the asset protection manager, facility manager, or other manager in charge before law enforcement is contacted.*

In these situations, the authorized associate must compile all documentation and video of the incident confirming the unlawful taking and file a police report with local law enforcement. A criminal complaint should not be signed as the authorized associate might not have firsthand knowledge of all the actions resulting in the unlawful taking. Thus, the information is provided to law enforcement for their independent judgment of whether criminal charges should be filed. Associates must assist in the prosecution of the suspect if law enforcement makes the decision to do so.

| | |
|---|---|
| Release Of Adult Shoplifters vs. Prosecuting | The facility shall make the decision as to whether charges should be initiated against a shoplifting suspect. Should there be disagreement or uncertainty as to the course of action to be pursued, facility management should confer with the market asset protection manager or regional asset protection director.<br><br>The facility may elect to release the shoplifting suspect (after recovering the merchandise), instead of having the individual arrested when extenuating circumstances suggest release rather than prosecution.<br>Some examples of circumstances warranting such action include the following:<br><br>• One or more of the elements required to prove intent to steal are missing.<br>• The observations of the witnesses are limited and they cannot be satisfied about all of the elements required to prove intent.<br>• The detained person appears to be incompetent.<br>• The subject does not meet the requirements of an accomplice who actively participated in the theft. |

WM-OSBORNE0000269


| | |
|---|---|
| | • If the suspect is under 16 or over 65<br>• If the dollar amount of the theft is under $25.00 and is not a repeat offender.<br><br>*Note*: Prosecute only those suspects whom you believe can be proven guilty through testimony in court. |
| Release Of Minor Suspects | <u>Policy</u><br><br>*Unless state law requires a different procedure, authorized associates may release minor suspects only to their parent or guardian. If an authorized associate is unable to reach a minor suspect's parent or guardian within 30 minutes after detaining a minor suspect or if a parent or guardian does not arrive at the facility within 60 minutes after notification to pick up a minor suspect, an authorized associate should contact local law enforcement authorities and pursue charges against a minor suspect, regardless of the amount of the theft. Document as a part of the file all communications to law enforcement.*<br><br>All efforts to contact the parent or guardian and any communications with a suspect's parent or guardian must be documented and made part of the file. Information to be collected includes the parent or guardian's name, the number called, time of call(s) and address provided by the suspect. Record the type of identification reviewed and the name of the individual claiming to be a parent or guardian. Information other than the name of the parent, guardian, family member, or family friend may not be copied from nor may copies be made of the identification provided.<br><br>Authorized associates should make efforts to deter rather than detain a minor suspect who:<br><br>• Appears to be 12 years old or younger, and<br>• Is suspected of shoplifting items valued at less than $25.00.<br><br>Refer to the Investigation and Detention of Shoplifters Policy (AP-09) for state specific information. |
| Trespassing The Shoplifter | <u>Policy</u><br><br>An Authorized Associate, facility manager or other manager in charge of the facility *may trespass a suspect under this policy only when the suspect is 16 years of age or older and:* |



- *The suspect is a repeat shoplifter at a Walmart facility; or*
- *The suspect was violent or threatened violence; or attempted to flee detention; or*
- *The suspect disrupted business operations beyond suspected shoplifting activities and processing procedure and refused to terminate their behavior upon request. Following required processing procedures (for example, having a female associate present as a witness) is not considered disruption of business for purposes of trespassing.*

*Being a shoplifting suspect or detained for shoplifting activities without the above stated conditions occurring is not adequate to justify a person being trespassed from Walmart property under this policy.*

*Trespassing individuals under other circumstances is reserved for facility management only.*

*Trespass of a shoplifter means that the individual is prohibited from entering Walmart property.*

Suspects may only be trespassed under this policy if the required criteria are met. Facilities are not authorized under this policy to trespass every shoplifting suspect. Asset protection personnel are only authorized to trespass shoplifting suspects in accordance with this policy. All other instances of trespassing an individual from Walmart property is at the discretion of facility management.

<u>Steps for Trespassing a Shoplifter/ Using the Trespass Form</u>
Guidelines for issuing trespass forms are located on the WIRE->Work->Asset Protection/Loss Prevention->State Statues, Trespass Forms and Restitution Notes.

It is crucial that if a person is trespassed, they understand they are not allowed on any Walmart/Sam's Club facility property. Attempt to provide the individual with a copy of the trespass notice.
If the suspect refuses to sign or accept the trespass form, then verbally communicate to the suspect that he/she has been trespassed from Walmart property by reading the trespass form to him/her. Further, ask law enforcement to inform the suspect that he/she has been trespassed from Walmart property and to document the notification from law enforcement in the resulting police report.

*Note:* Asset protection hourly associates are permitted to trespass suspects from a facility only under AP-09. Trespassing individuals under other circumstances is reserved for facility management only.

> Example: A cashier calls an APA and tells her that there is a drunk and disorderly customer bothering other customers in checkout line number 18 and asks the APA to come to the frontend and

WM-OSBORNE0000271



trespass this individual. What should the APA do?

Answer: Politely remind the cashier that the trespassing of customers is handled by facility management and ensure facility management is notified of the situation.

Enforcement of Trespass Notice

Enforcement of the trespass notice must be initiated by facility management only, using the following steps:

- Ensure the person was previously issued a trespass warning. If uncertain about identity, facility management should not approach the individual.
- Ask the person in question to leave the facility.

If this person does not comply, facility management is to make the decision whether to contact local law enforcement. Local law enforcement will handle the situation and ask them to leave.

Note: If a request for readmission to Walmart property is received, forward the request to the asset protection recovery team at the following address:
AP Recovery
Attn: Readmission, MS 0815
702 SW 8th Street Bentonville,
AR 72716-0815

Determining the length of time for a trespass will vary depending on your State's guidelines. Under all circumstances you will comply with the guidelines set by your State. A reasonable "rule of thumb" is one year from the date the notice was provided.

December 28, 2017

WM-OSBORNE0000272



| Responsibility | Facility managers and managers in charge are responsible to ensure that authorized associates are utilizing only approved authorized detention methods detailed in this policy. The physical well-being of suspects, customers, and Walmart associates is first priority. If you are aware or become aware of a detention or attempted detention, which results in physical contact beyond physical redirection between a customer and an associate, you are required to immediately report the incident to the market asset protection manager and regional asset protection director for the facility. |
|---|---|
| | If you observe or become aware of this policy having been violated, you are required to immediately report the incident to the market asset protection manager and regional asset protection director for the facility. |
| | Failure to comply with this Policy may result in disciplinary action, up to and including termination. |